IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| LESLIE GULDENZOPH, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE INDIGO ROAD HOSPITALITY GROUP; O-KU, LLC; O-KU NASHVILLE, LLC; O-KU ATLANTA, LLC; O-KU CHARLOTTE, LLC; O-KU JACKSONVILLE, LLC; O-KU RALEIGH, LLC; OAK NASHVILLE MANAGEMENT, LLC; OAK RALEIGH, LLC; OAK ALEXANDRIA, LLC, <br><br> Defendants. | Civil Action No. <u>2:23-cv-05339-DCN</u> <br><br><br> **COMPLAINT** <br><br><br> **(Jury Trial Demanded)** |

Plaintiff brings this complaint against Defendants, The Indigo Road Hospitality Group, LLC, O-Ku, LLC, O-Ku Nashville, LLC, O-Ku Atlanta, LLC, O-Ku Charlotte, LLC, O-Ku Jacksonville, LLC, O-Ku Raleigh, LLC, Oak Nashville Management, LLC, Oak Raleigh, LLC, and Oak Alexandria, LLC (collectively "Defendants"), on behalf of herself and all others similarly situated pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. and allege as follows:

## NATURE OF THE ACTION

1. This action is brought individually and as a collective action for unpaid minimum wages, liquidated damages, declaratory, and other relief under the FLSA and as a class action asserting claims for unjust enrichment.

2. The FLSA requires that "tipped employees" be given proper notice as to their tipped wage calculation in accordance with 29 U.S.C. § 203(m)(1)-(2)(A) and that the employer does not

"keep tips received by its employees for any purposes," 29 U.S.C. § 203(2)(B). As part of those requirements, pooling of tips is permitted only to the extent the tips are pooled "among employees who customarily and regularly receive tips." *Id.* § 203(2)(A).

3.     The FLSA also prohibits employers from taking an adverse employment action, such as discharge, against their employees for raising complaints concerning wrongful wage and hour practices. 29 U.S.C. § 215.

4.     Plaintiff Leslie Guldenzoph is a former employee of Defendants. Defendants are covered employers under the FLSA. Yet, for years up until around her termination, Defendants maintained company-wide policies that: (1) failed to correctly inform Plaintiff of their desire to rely on tip credit to meet their minimum wage obligations; (2) paid a tip wage to Plaintiff, but required her to perform improper and excessive amounts of non-tipped work, such as cleaning, cooking, and grocery shopping; (3) required her to perform non-tipped side work, including setting up tables, cleaning tables, refilling condiments, and bussing tables, in excess of 20% of the time spent working in the week and for continuous periods exceeding 30 minutes; and (4) operated an illegal tip-pooling scheme by including non-tipped employees, like chefs and kitchen expeditors ("expos"), to participate in the tip pool. When she complained about some of these transgressions, Plaintiff was fired.

5.     As a result of these violations of the FLSA's tip-credit provisions, Defendants have lost the ability to use the tip credit and, therefore, must compensate Plaintiff and all similarly situated workers at the full minimum wage rate for all hours worked, unencumbered by the tip credit. In other words, Defendants must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

6.     Additionally, Defendants violated the general minimum wage and minimum hour requirements of the FLSA by requiring Plaintiff and other members of the collective group ("Group Members") to perform side work unrelated to their tip-producing jobs, including cooking, cleaning, and shopping. Defendants failed to pay Plaintiff and Group Members the required minimum wage, including overtime compensation when applicable, for these duties.

7.     Plaintiff brings these claims as a collective action and a class action on behalf of herself and all persons similarly situated seeking lost wages, liquidated damages, and other relief. Specifically, Plaintiff seeks redress for Defendants' willful failure to compensate her for hours worked at the applicable federal minimum wage and violations of the FLSA's tip credit provisions.

8.     Separately, and in her individual capacity, Guldenzoph brings a claim for retaliatory discharge against Defendants Indigo Road Hospitality Group, LLC and O-Ku Nashville, LLC because she was terminated from her employment when she complained about Defendants' unlawful wage practices. *See* 29 U.S.C. § 215(a)(3).

9.     The collective action provisions of the FLSA provide for opt-in class participation. 29 U.S.C. § 216(b). Plaintiff's consent/opt-in form is attached hereto as **Exhibit A-1**.[1]

10.     Plaintiff brings the state law claims asserted herein on behalf of herself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23 ("Class Members"), which provides for opt-out class participation.

## PARTIES

11.     Plaintiff Leslie (Leah) Guldenzoph is a resident of Nashville, TN. She was employed by Defendants from July 2017 to March 2020 and then from September 2021 until July 11, 2023.

---

[1] Subsequent consent/opt-in forms will be filed as A-2, A-3, A-5, etc. as they are received.

12.     Defendant Indigo Road Hospitality Group, LLC ("Indigo Road") is a South Carolina limited liability company, with its principal place of business at 1426 Meeting Street, Charleston, South Carolina 29405. Process can be served on Defendant Indigo Road Hospitality Group, LLC through its registered agent Stephen D. Palmer, at 1426 Meeting Street, Charleston, South Carolina 29403.

13.     Defendant O-Ku, LLC ("O-Ku") is a South Carolina limited liability company, with its principal place of business at 463 King Street, Charleston, South Carolina, 29403. Its registered agent is Stephen D. Palmer, 1426 Meeting Street, Charleston, South Carolina, 29403.

14.     Defendant O-Ku Nashville, LLC ("O-Ku Nashville") is a Tennessee limited liability company with its principal place of business at 1426 Meeting Street, Charleston, South Carolina 29405. Its registered agent is Incorp Services, Inc., 1585 Mallory Lane, Suite 104, Brentwood, Tennessee 37027.

15.     Defendant Oak Nashville Management, LLC is a Tennessee limited liability company with its principal place of business at 1426 Meeting Street, Charleston, South Carolina 29405. Its registered agent is Incorp Services, Inc., 1585 Mallory Lane, Suite 104, Brentwood, Tennessee 37027.

16.     Defendant O-Ku Atlanta, LLC is a Georgia limited liability company with its principal place of business at 1426 Meeting Street, Charleston, South Carolina 29405. Its registered agent is Kevin Krapp, 2252 Paul Avenue, NW, Atlanta, Georgia 30318.

17.     Defendant O-Ku Charlotte, LLC is a North Carolina limited liability company with its principal place of business at 1426 Meeting Street, Charleston, South Carolina 29405. Its registered agent is Incorp Services, Inc., 176 Mine Lake Court, Suite 100, Raleigh, North Carolina 27615.

4

18.    Defendant O-Ku Jacksonville, LLC is a Florida limited liability company with its principal place of business at 1426 Meeting Street, Charleston, South Carolina 29405. Its registered agent is Incorp Services, Inc., 3458 Lakeshore Drive, Tallahassee, Florida 32312.

19.    Defendant O-Ku Raleigh, LLC is a North Carolina limited liability company with its principal place of business at 1426 Meeting Street, Charleston, South Carolina 29405. Its registered agent is Incorp Services, Inc., 176 Mine Lake Court, Suite 100, Raleigh, North Carolina 27615.

20.    Defendant Oak Raleigh, LLC is a North Carolina limited liability company with its principal place of business at 1426 Meeting Street, Charleston, South Carolina 29405. Its registered agent is Incorp Services, Inc., 176 Mine Lake Court, Suite 100, Raleigh, North Carolina 27615.

21.    Defendant Oak Alexandria, LLC is a Virginia limited liability company with its principal place of business at 1426 Meeting Street, Charleston, South Carolina 29405. Its registered agent is Incorp Services, Inc, 7288 Hanover Green Drive, Mechanicsville, Virginia 23111.

## JURISDICTION AND VENUE

22.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b) *et seq*. The Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) & (c) because multiple Defendants are located within this Judicial District and this Charleston Division, because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District

and this Charleston Division, because multiple Defendants maintain their principal place of business in this Judicial District and this Charleston Division, and because the unlawful labor practices giving rise to Plaintiff's claims were committed, at least in part, within this Judicial District and this Charleston Division.

## COVERAGE

24.     At all material times, Defendants were employers within the meaning of the FLSA. 29 U.S.C. § 203(d).

25.     At all material times, Defendants are enterprises in commerce or the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

26.     At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

27.     At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

28.     At all material times, Defendants have operated as a single "enterprise" within the meaning of 29 U.S.C. § 203(r)(1). That is, Defendants perform related activities at multiple locations through unified operation and common control for a common business purpose.

29.     Defendants operate brands of sushi and steak restaurants under the respective names "O-Ku" and "Oak" across the U.S. Southeast, all under the control of the same senior-level management. The O-Ku sushi restaurants and Oak steak restaurants each advertise themselves as unified entities through a single website for each brand.

30.     Defendants represent themselves to the public as a unified entity, operating restaurants at multiple locations. All restaurants share employees, have common management, pool resources, operate from the same headquarters, and have common ownership.

31.     Defendants operate under a unified business model, and part of that unified business model is the wage violations alleged in this Complaint.

32.     Thus, Defendants collectively form a single "enterprise" and are liable for the violations of the others.

## FACTS

### Defendants' General Wage Compensation Policies

33.     Upon information and belief, Defendants attempted to utilize the tip credit to meet their minimum wage obligation to their tipped workers, including the Plaintiff, Group Members, and Class Members.

34.     At all relevant times, however, Defendants never provided the Plaintiff, Group Members, and Class Members with the statutorily required notice regarding Defendants' use of the tip credit.

35.     They did not notify Plaintiff of the amount of the cash wage that was to be paid to her.

36.     They did not notify Plaintiff of the amount that her wages would be increased because of the tip credit.

37.     They did not notify Plaintiff that she could retain all tips she received except for tips contributed to a valid tip pool.

38.     Instead, Defendants subjected Plaintiff to a variable compensation policy that was determined largely on the whims of Defendants.

39.     Indeed, for years, Defendants maintained a policy and practice whereby tipped employees were required to perform non-tip-producing side work unrelated to the employees' tipped occupation while still being compensated for that work at the lesser non-minimum wage tip credit rate.

7

40.     Among other duties, Plaintiff was directed to shop for groceries and other supplies without compensation and without any reimbursement of transportation costs.

41.     Defendants maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of the amount permitted by law, performing non-tip-producing side work related to the employees' tipped occupation, including, but not limited to, setting up tables, cleaning tables, bussing tables, pre-bussing tables, wiping chairs, preparing food, and refilling condiments.

42.     Further, Defendants required Plaintiff, Group Members, and Class Members to perform non-tip-producing work before the restaurant opened and after the restaurant closed. Indeed, Defendants required the Plaintiff, Group Members, and Class Members to arrive prior to the restaurant's opening for business and after they had closed for business, when there were no customers and no opportunities to earn tips, to perform manual labor cleaning and setup duties.

43.     Depending on which shift they were assigned, Plaintiff, Group Members, and Class Members customarily spent between 60 and 135 minutes performing non-tip-producing work before the restaurants were open or after the restaurants were closed.

44.     Additionally, Defendants required and continue to require tipped employees to give up a portion of their tips to non-tipped employees, specifically to sushi chefs and chef-coat-wearing kitchen expos who do not interact with guests.

45.     Upon reasonable belief, these policies and practices, which had the effect of depriving Plaintiff, Group Members, and Class Members of a minimum wage, were in effect for several years, until shortly after Plaintiff's termination.

### *Plaintiff's Termination from Employment*

46.     In June of 2023, Kimball Briezna, Director of O-Ku Operations for Indigo Road, visited Nashville as part of his work for Defendants.

8

47.     On or around June 17, 2023, Guldenzoph, then a server with O-Ku Sushi Nashville, approached Briezna to discuss her concerns about the Defendants' wage and hour policies referenced above.

48.     Despite her concerns, Guldenzoph had enjoyed working for Defendants for the previous five years, and she approached Briezna that day in earnest to rectify the wage and hour violations she reasonably believed were perpetuated by Defendants' unlawful wage and hour policies and practices.

49.     Guldenzoph made her concerns known to Briena, and following their discussion, Briezna notified Plaintiff's direct supervisors, including O-Ku Nashville General Manager Ashley Johnson, about his conversation with Plaintiff and its contents.

50.     On or around June 18, 2023, the day after their initial conversation, Briezna approached Guldenzoph to follow up about the issues they had discussed.

51.     During this second conversation, Briezna informed Plaintiff that he had spoken to Plaintiff's manager about their prior conversation and questioned Plaintiff's motives in raising her concerns.

52.     Guldenzoph explained that although she enjoyed working for Defendants, that did not mean there was no room for improvement, and that she intended to help ensure that Defendants appropriately compensated her and her co-workers for the work they performed for Defendants.

53.     In addition to reiterating her concerns about potential FLSA issues, Guldenzoph also expressed her concern to Briezna that Plaintiff and other workers had recently been directed on more than one occasion by local management not to discuss their wages with each other, directives that Guldenzoph understood to be in violation of the National Labor Relations Act.

54.     Guldenzoph further explained to Briezna that Plaintiff intentionally brought her concerns to him and Defendants first, before pursuing any external complaints or reports, because she liked working with Defendants and wanted to give them an opportunity to address the issues internally. Plaintiff said she merely wanted to confirm that Defendants were aware of their obligations under federal laws and were properly compensating Plaintiff and her coworkers for their labor. Plaintiff further stated that, although she hoped this would be handled internally, she was willing to raise her concerns externally if necessary.

55.     On or around July 8, 2023, within days of Plaintiff's returning from a weeklong vacation, Plaintiff's manager wrote Plaintiff up for eating extra food that the kitchen staff had set out in the back for the servers.

56.     Because she had been eating with another employee and the manager did not write up that employee, Plaintiff was confused about the reason for her write-up for doing something that she and others had done on multiple occasions before, without repercussions, and against which there was no rule. Therefore, she sought clarification immediately after the write-up from O-Ku General Manager Ashley Johnson and Gabby Raven, Indigo Road's Area Manager, who is responsible for overseeing both O-Ku and Oak Nashville.

57.     Defendants told Plaintiff the write-up represented "an accumulation of behaviors over time" that together raised doubts as to the Plaintiff's "self-awareness." Management also questioned the extent to which she was a team player, noting that Plaintiff "spent a decent amount of time" pointing out "things that the business isn't doing right" by its workers while not "own[ing] up to the moments where [Plaintiff isn't] doing right by the business."

58.     Although Defendants stated that the write-up represented "an accumulation of behaviors over time," Defendants still required Plaintiff to train new employees after her write-up, a fact demonstrating that it was entirely pretextual.

59.     Guldenzoph explained to management that their explanations made her feel like the write-up was "retaliation" for pointing out Defendants' apparent violations of federal law, and she was told that was not the reason for the write-up and that it was about "a bigger picture."

60.     When pressed, Guldenzoph's boss admitted that Plaintiff's complaint prompted management to begin to enforce policies that might have been overlooked or gone unenforced in the past.

61.     Plaintiff reiterated her concerns about illegal wage and hour practices and was directed to Defendants' Human Resources Department for any further discussion about those concerns.

62.     The morning after the write-up, Defendants' management called Plaintiff, instructed her not to come in for her next shifts that day or the following day, and asked her to attend a meeting with Kelly Peters, Indigo Road's Director of Human Resources.

63.     On or around July 11, 2023, three days after the write-up and about three weeks following Plaintiff's conversations with Director of Operations Kimball Briezna, wherein she raised Defendants' FLSA and other federal law violations, Plaintiff attended a meeting at Oak Steakhouse in Nashville with O-Ku General Manager Ashley Johnson, Indigo Road Area Manager Gabby Raven, and Indigo Road Human Resources Director Kelly Peters.

64.     Once again, Plaintiff expressed to Defendants her concerns about their failure to comply with the FLSA's wage and hour laws, and once again, Defendants dismissed those concerns and ignored Plaintiff.

65.     Plaintiff informed Defendants that she had reported some of her concerns regarding Defendants' practices to the Department of Labor. Defendants did not mention anything to Plaintiff about terminating her employment until after Plaintiff informed them that she had made a report to the Department of Labor.

66.     Defendants' management representatives in the meeting at Oak Nashville responded that Plaintiff had behaved rashly in the wake of her write-up, that her conduct led them to the conclusion that she was insubordinate, and that she would be discharged from employment based on her insubordination.

67.     By Defendants' own admission, Plaintiff was discharged because of her persistent attempts to hold Defendants accountable for their obligations to Plaintiff and other workers under applicable federal law. To the extent Defendants claim Plaintiff was insubordinate, those claims are merely a pretext for the real reason for her termination from employment, which was her complaints concerning Defendants' FLSA and other violations of federal law.

## FLSA COLLECTIVE ACTION ALLEGATIONS

68.     Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by any Defendant as a tipped worker for at least one week during the three-year period prior to the commencement of this action until the present.

69.     Upon information and belief, all employees were subjected to the same policies of Defendants regarding wages and hours, suffered the same legal violations under the same factual circumstances, and thus seek the same remedies.

70.     Defendants have willfully and intentionally engaged in a knowing and continuous pattern and practice of violating the FLSA, as detailed herein, by failing to properly compensate Plaintiff and Group Members.

71.    As a result of Defendants' unlawful acts, Plaintiff and Group Members have been deprived of regular rate compensation and overtime compensation in amounts to be determined at trial and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216.

72.    A collective action would be the most efficient way to resolve the Defendants' failure to pay proper minimum wage and improper tip pooling claims because individual actions would waste precious federal judicial resources.

## CLASS ACTION ALLEGATIONS

73.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class (the "Class") consisting of the Class Members: all persons who were or are employed by any Defendant as a tipped worker for at least one week during the three-year period prior to the commencement of this action until the present.

74.    Class Members are so numerous that their joinder is impracticable.

75.    Plaintiff's claims are typical of the claims of the members of the Class because all members of the Class were similarly affected by Defendants' wrongful conduct and Defendants' retaining benefits received from the Class members, the retention of which would be unjust if Defendants did not pay for them.

76.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in wage and hour litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

77.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including the following:

   a.  whether Class Members conferred benefits upon Defendants;

    b.    whether Defendants realized those benefits; and

    c.    whether Defendants have retained those benefits under conditions that make it unjust to retain those benefits without paying their value.

78.    The relevant facts and circumstances of how the Class Members conferred benefits on Defendants, how the Defendants realized those benefits, and how the conditions make it unjust for Defendants are materially identical. Accordingly, the questions of law and fact common to Class Members predominate over any questions affecting only individual members.

79.    A class action is superior to all other available methods for the fair and efficient of this controversy because joinder of all Class Members is impracticable. There will be no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

## COUNT I

### VIOLATION OF 29 U.S.C. § 215(a)(3)
### (Unlawful Retaliation)
*(On behalf of Plaintiff Guldenzoph)*

80.    Plaintiff incorporates by reference each preceding allegation of this Complaint as if fully set forth herein.

81.    Plaintiff engaged in protected activity within the meaning of 29 U.S.C. § 215(a)(3) when she raised complaints about Defendants' wage and hour practices and disclosed that she had reported her concerns to the Department of Labor.

82.    Within just weeks of her complaints and disclosures to Defendants, Defendants cracked down on enforcement of previously relaxed or unenforced workplace rules against Plaintiff only.

83.    When she continued to raise her concerns with Defendants' violations of the FLSA even after being disciplined, Defendants deemed Plaintiff "insubordinate" and terminated her employment.

84.    Defendants' written discipline and formal termination of Plaintiff are both actions that a reasonable employee would find to be materially adverse.

85.    Defendants admitted their conclusion that Plaintiff was "insubordinate" was tied to Plaintiff's numerous complaints over the Defendants' wage and hour violations.

86.    Thus, Defendants discharged Plaintiff from her employment subsequent to and/or contemporaneously with her protected conduct.

87.    Plaintiff's numerous complaints were the motivating factor and but-for cause of her termination by Defendants.

88.    As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm, including but not limited to lost wages and earnings, other non-wage economic damages, and mental anguish.

89.    Plaintiff is entitled to all remedies available for violations of the FLSA, including but not limited to the damages provided in 29 U.S.C. § 216(b).

<u>**COUNT II**</u>
**VIOLATION OF 29 U.S.C. §§ 203(m); 216(b)**
**(Failure to Provide Proper Notice of Tip Credit and Pay Minimum Wage)**
(*On behalf of Plaintiff and Group Members*)

90.    Plaintiff incorporates by reference each preceding allegation of this Complaint as if fully set forth herein.

91.    Defendants paid their tipped workers less than the required federal minimum wage.

92.    Defendants attempted to utilize the tip credit to meet their minimum wage obligation to their tipped workers, including the Plaintiff and Group Members.

93.     The use of tip credit is conditioned upon, *inter alia*, the employer's providing proper notice to the employee because the tip credit "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection." 29 U.S.C. § 203(m)(2)(B).

94.     Such notification requires, among other things, notice of: "(1) [t]he amount of the cash wage that is to be paid to the tipped employee by the employer; (2) the additional amount by which the wages of the tipped employees are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; (3) that all tips received by the tipped employee must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips; **and** (4) that the tip credit shall not apply to any employee who has not be informed of the requirements in this section." 29 C.F.R. § 531.59(b).

95.     Upon information and belief, Defendants did not satisfy the strict requirements to allow their use of the tip credit of the FLSA.

96.     Defendants never told Plaintiff or other Class Members that they would use tips as a credit against Defendants' minimum wage obligations to Plaintiff and Class Members.

97.     Defendants never explained to Plaintiff or Class Members how the tip pooling arrangement worked and, in fact, improperly included non-tipped employees – those who do not regularly and customarily receive tips – in the tip pooling arrangement.

98.     Because Defendants did not provide proper notice under 29 U.S.C. § 203(m)(2)(A) and 29 C.F.R. § 531.59(b) to Plaintiff or Class Members, Defendants' use of a tip wage was entirely improper and violated federal law.

99.     Consequently, Plaintiff and those similarly situated were not compensated at the federally mandated minimum wage.

100.    Class Members were only compensated at $2.17 per hour when they should have received at least $7.25 per hour.

101.    Defendants knew or should have known that their policies and practices violated the FLSA, including as a result of Plaintiff's complaints. However, Defendants made no good faith effort to comply with the FLSA. Rather, they acted knowingly, willfully, and/or with reckless disregard of the law in failing to provide the requisite notice and pay its employees the appropriate federally mandated minimum wage.

102.    Plaintiff and other Class Members are entitled to recover the difference in wages paid and due to them as well as all statutory damages permitted under the FLSA.

### COUNT III
### VIOLATION OF 29 U.S.C. §§ 203(m); 216(b)
### (Improper Inclusion of Non-Service/Kitchen Staff in the Tip Pool)
*(On behalf of Plaintiff and Group Members)*

103.    Plaintiff incorporates by reference each preceding allegation of this Complaint as if fully set forth herein.

104.    Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as tipped workers for at least one week during the three-year period prior to the commencement of this action until the present.

105.    Upon information and belief, all employees were subjected to the same policies of Defendants with respect to wages and hours, suffered the same legal violations under the same factual circumstances, and thus seek the same remedies.

106.    Defendants have willfully and intentionally engaged in a knowing and continuous pattern and practice of violating the FLSA, as detailed herein, by failing to properly compensate Plaintiff and Group Members.

107.    As a result of Defendants' unlawful acts, Plaintiff and Group Members have been deprived of regular rate compensation and overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216.

108.    A collective action would be the most efficient way to resolve Plaintiff's and Group Members' claims for failure to pay proper minimum wage and improper tip pooling because individual actions would waste precious federal judicial resources.

109.    Defendants knew or should have known that their policies and practices violated the FLSA, including as a result of Plaintiff's complaints. However, Defendants made no good faith effort to comply with the FLSA. Rather, they acted knowingly, willfully, and/or with reckless disregard of the law in failing to provide the requisite notice and pay its employees the appropriate federally mandated minimum wage.

110.    Plaintiff and Group Members have been harmed and are entitled to recover the difference in wages paid and due to them as well as all statutory damages permitted under the FLSA.

**COUNT IV**
**VIOLATION OF 29 U.S.C. §§ 203(m); 216(b)**
**(Failure to Pay Minimum Wage for Non-Tipped Work)**
(*On behalf of Plaintiff and Group Members*)

111.    Plaintiff incorporates by reference all preceding allegations of this Complaint as if fully set forth herein.

112. For years, Defendants maintained a policy and practice whereby tipped employees were required to perform non-tip-producing side work unrelated to the employees' tipped occupation while being compensated only at the tip-credit rate.

113. Among other things, these duties included cooking, shopping for groceries and other supplies, and deep cleaning the restaurants.

114. As part of this policy, Defendant also required tipped employees to spend a substantial amount of time, in excess of the amount permitted by law, performing non-tip-producing side work related to the employees' tipped occupation, including but not limited to setting up tables, cleaning tables, bussing tables, pre-bussing tables, wiping chairs, preparing food, and refilling condiments.

115. Defendants also required Plaintiff and those similarly situated to perform this non-tip-producing work prior to the opening of the restaurant and after the restaurant closed, including manual labor, cleaning, and set-up duties. Upon information and belief, Plaintiff and those similarly situated routinely spent over twenty percent of their workday performing non-tip-producing work per shift. 29 C.F.R. § 531.56(e).

116. For many years, Defendants compensated Plaintiff at the tip-credit rate for this non-tip-producing work.

117. Because these duties either exceeded the amount allowed by law or were unrelated to Plaintiff's and Group Members' tipped duties, they are entitled to the full minimum wage for the time they spent performing that work. 29 U.S.C. § 203(m).

118. Defendants knew or should have known that their policies and practices violated the FLSA, including as a result of Plaintiff's complaints. However, Defendants made no good faith effort to comply with the FLSA. Rather, they acted knowingly, willfully, and/or with reckless

disregard of the law in failing to provide the requisite notice and pay its employees the appropriate federally mandated minimum wage.

119.     Plaintiff and Group Members are entitled to recover the difference in wages paid and due to them as well as all statutory damages permitted under the FLSA.

### COUNT V

**VIOLATION OF 29 U.S.C. §§ 203(m); 206(a)(1); 216(b)**
**(Failure to Pay for Work Completed)**
(*On behalf of Plaintiff and Class members*)

120.     Plaintiff incorporates by reference each preceding allegation of this Complaint as if fully set forth herein.

121.     From time to time, Plaintiff and those similarly situated were required to perform side work that was unrelated to their tip-producing jobs, including cooking and shopping for groceries and materials on personal time. The Defendants required Plaintiff and Class Members to perform this work as a condition of employment.

122.     Servers were regularly scheduled to cook family meal for minimum wage versus the standard kitchen hourly rate. At the time, Defendants reasoned that it was a "morale boosting exercise" to give the kitchen staff a day off from making family meal. Plaintiff was later informed by General Manager Ashley Johnson that Defendants were "finally fully staffed enough in the kitchen, so servers won't have to make family meal anymore."

123.     Plaintiff and those similarly situated were not compensated at any wage for their time spent shopping and traveling between convenience, grocery, or other stores and the restaurant.

124.     Plaintiff and Group Members were not compensated at *any* wage for their time spent shopping and traveling between those stores and the restaurant.

125.     Defendants violated the FLSA by failing to comply with federal minimum wage requirements. 29 U.S.C. § 206(a)(1).

126.    As a result of Defendants' unlawful conduct, Plaintiff and those similarly situated have suffered and continue to suffer harm, including but not limited to lost wages and other financial loss. 29 U.S.C. § 216(b).

127.    Defendants knew or should have known that this work was completed, and they should have compensated Plaintiff and those similarly situated for the work. However, Defendants made no good faith effort to comply with the FLSA. Rather, they acted knowingly, willfully, and/or with reckless disregard of the law in failing to provide the requisite notice and pay its employees the appropriate federally mandated minimum wage.

## COUNT VI

### VIOLATION OF 29 U.S.C. § 207(a)(2)
### (Failure to Pay Overtime)
(*On behalf of Plaintiff and Group Members*)

128.    Plaintiff incorporates by reference all preceding allegations of this Complaint as if fully set forth herein.

129.    At all times relevant, Defendants were required to pay employees "a rate not less than one and one-half times the regular rate at which [they were] employed" for all hours worked in excess of forty (40) per work week, pursuant to 29 U.S.C. § 207(a)(2).

130.    Defendants failed to pay Plaintiff and Class Members one and one-half times their regular wage for any and all hours worked in excess of forty (40) per work week throughout the duration of their employment.

131.    This was particularly true for hours of work in which Group Members were required to cook, shop for groceries, and engage in travel for supplies for those purposes.

132.    Defendants violated 29 U.S.C. § 207(a)(2) by failing to comply with the federal minimum wage and maximum hours requirements.

133.    As a result of Defendants' unlawful conduct, Plaintiff and Group Members have suffered and continue to suffer harm, including but not limited to lost wages and other financial loss.

134.    Plaintiff and Group Members are entitled to all remedies available for violations of the FLSA, including, but not limited to damages provided in 29 U.S.C. § 216(b).

## COUNT VII

### QUANTUM MERUIT / UNJUST ENRICHMENT
*(On behalf of Plaintiff and the Class)*

135.    Plaintiff incorporates by reference each preceding allegation of this Complaint as if fully set forth herein.

136.    Plaintiff and the Class have conferred a benefit on Defendants in the form of tips retained by Defendants to pay overhead costs; Defendants have realized those benefits; and it would be against fundamental principles of equity, fairness, and justice to allow Defendants' retention of those benefits without paying for their value under the circumstances.

## CONCLUSION

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated employees, requests the following relief:

A.    Minimum wage compensation unadulterated by the tip credit;

B.    Liquidated damages;

C.    Reimbursement for all expenses and wages wrongfully withheld;

D.    An order conditionally certifying this matter as a collective action;

E.    An order certifying the Class, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel.

F.    An order requiring Defendants to correct their pay practices going forward;

G.     Reasonable attorney's fees, costs, and expenses of this action;

H.     Pre-judgment and post judgment interest, as provided by law; and

I.     Such other legal and equitable relief as this Court shall deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff, on behalf of herself and on behalf of all other similarly situated employees, hereby demands a trial by jury.

Respectfully submitted,

s/ Badge Humphries

Sullivan's Island, South Carolina
October 24, 2023

James M. Griffin (D.S.C. No. 1053)
Griffin Humphries LLC
4408 Forest Drive, Suite 300
Columbia, South Carolina 29206
Tel. (803) 744-0800
Fax (803) 744-0805
jgriffin@griffinhumphries.com

Badge Humphries (D.S.C. No. 9550)
Griffin Humphries LLC
2113 Middle Street, Suite 305
Sullivan's Island, South Carolina 29482
Tel. (843) 883-7444
bhumphries@griffinhumphries.com

Nathan R. Ring
   (*pro hac vice* motion forthcoming)
Stranch, Jennings & Garvey, PLLC
3100 W. Charleston Blvd., Ste. 208
Las Vegas, Nevada 89102
Tel. (725) 235-9750
lasvegas@stranchlaw.com

*Attorneys for Plaintiff Leslie Guldenzoph, Group Members, and the Proposed Class*