**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| LESLIE GULDENZOPH, *individually and on behalf of all others similarly situated*, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 2:23-cv-05339-DCN |
| THE INDIGO ROAD HOSPITALITY GROUP; O-KU, LLC; O-KU NASHVILLE, LLC; O-KU ATLANTA, LLC; O-KU CHARLOTTE, LLC; O-KU JACKSONVILLE, LLC; and O-KU RALEIGH, LLC; | ) ) ) ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |

This matter is before the court on defendants The Indigo Road Hospitality Group ("IRHG"); O-Ku, LLC ("O-Ku Charleston"); O-Ku Nashville, LLC ("O-Ku Nashville"); O-Ku Atlanta, LLC ("O-Ku Atlanta"); O-Ku Charlotte, LLC ("O-Ku Charlotte"); O-Ku Jacksonville, LLC ("O-Ku Jacksonville"); and O-Ku Raleigh, LLC's ("O-Ku Raleigh") (collectively "defendants") motion to dismiss, ECF No. 19. For the reasons set forth below, the court grants the motion in part and denies it in part. Specifically, the court grants the motion with respect to O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, and O-Ku Raleigh and dismisses these defendants for lack of subject matter jurisdiction. With respect to the remaining defendants, the court grants leave for jurisdictional discovery and defers ruling on the personal jurisdiction and venue issues presented in this case until after that discovery has been completed.

1

# I.  BACKGROUND

This case presents an employment dispute brought by a former waitress, individually and on behalf of a purported collective and class, against a group of restaurants that she claims acted as a single entity.  Specifically, plaintiff Leslie Guldenzoph ("Guldenzoph") is a resident of Tennessee and was a waitress at O-Ku Nashville from July 2017 until March 2020.  ECF No. 15, Amend. Compl. ¶ 11.  She alleges that her employer committed various violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.  See generally Amend. Compl.  For instance, she accuses her employer of utilizing tip credit to meet minimum wage obligations without providing the statutorily required notice; requiring her to do certain work without compensation, such as going grocery shopping and non-tip-producing side work; and requiring her to pool her tips with various non-tipped employees.  Id. ¶¶ 4–5, 66–78.  She further alleges that she spoke with her superiors about these possible illegalities and that they fired her in retaliation.  Id. ¶¶ 79–100.

Relevant to the motions currently before the court, Guldenzoph alleges that all of the defendants cooperate together as a single entity.  According to Guldenzoph, IRHG is a South Carolina limited liability company ("LLC") with its principal place of business at 1426 Meeting Street in Charleston, South Carolina.  Id. ¶ 12.  The Restaurant Defendants[1] are sushi restaurants that operate in various locations across the South under

---

[1] Throughout this order, the court refers to O-Ku Charleston, O-Ku Nashville, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, and O-Ku Raleigh collectively as the "Restaurant Defendants."  The court refers to the Restaurant Defendants and IRHG, together, as "defendants."

2

the name, "O-Ku."[2]  Amend. Compl. ¶ 29.  Each Restaurant Defendant is a separate LLC

organized according to the laws of its respective state.  Id. ¶¶ 13–19.  For example, O-Ku

Charleston is a South Carolina LLC, O-Ku Nashville is a Tennessee LLC, O-Ku Atlanta

is a Georgia LLC, and so on.  Id.  However, each of the Restaurant Defendants lists its

principal office in its respective state business registration paperwork as 1426 Meeting

Street in Charleston, South Carolina.  Id.

Moreover, despite defendants organizing themselves as separate entities,

Guldenzoph asserts that IRHG and its executives wholly own the Restaurant Defendants

and exercise complete control over their operations.  Id. ¶¶ 34–39.  For instance, she

claims that IRHG standardizes the products and services offered at each of the Restaurant

Defendant's locations and that IRHG sets the specific days and hours that each of the

Restaurant Defendants will be opened.  Id. ¶¶ 58–59.

Notably, Guldenzoph asserts that IRHG makes all employment related decisions

for the Restaurant Defendants, including hiring and firing the Restaurant Defendants'

employees and providing centralized Human Resources services for all Restaurant

Defendants.  Id. ¶¶ 36–37.  This control includes directly hiring the various general

managers, chefs, and other management level employees for the Restaurant Defendants.

Id. ¶¶ 44–52.  IRHG also allegedly controls the material aspects of the Restaurant

Defendants' non-management workers' employment.  Id. ¶ 53.  Guldenzoph accuses

---

[2] In her amended complaint, Guldenzoph mentions another group of restaurants
that operate in various locations under the name, "Oak."  Id. ¶¶ 15; 20–21; 29.
Guldenzoph named the various Oak restaurants as defendants in her original complaint
but did not name them as defendants in her amended complaint.  See ECF No. 1, Compl;
Amend Compl.  Consequently, the court omits discussion of the Oak restaurants from
this order because they are not named as defendants in the operative complaint.  See id.

3

IRHG of defining the employees' job titles, positions, and duties; determining whether each position is hourly or exempt; determining whether each job receives the tip wage or the federal minimum wage; setting labor budget and staffing levels for each restaurant; mandating employee qualifications and training; retaining the ability to fire non-management employees; and mandating that all of the Restaurant Defendants use the same job descriptions, which include the name, "Indigo Road Hospitality Group," when advertising vacancies.  Id. ¶¶ 53, 62–63.

In addition, IRHG asks employees working for one of the Restaurant Defendants to work for one of the other Restaurant Defendants.  Id. ¶ 61.  For example, while Guldenzoph regularly worked at O-Ku Nashville, she was asked to work at O-Ku Jacksonville for a few months when the latter was first opening.[3]  Amend. Compl. ¶ 61.

In June 2023, Guldenzoph discussed her concerns about defendants' employment practices with Kimball Briezna ("Briezna"), IRHG's director of O-Ku operations, and Briezna thereafter informed Guldenzoph's direct manager about their conversation.  Id. ¶¶ 79–87.  A few days later, Guldenzoph's manager wrote her up for eating extra food that had been left out for the servers but did not write up another employee who was engaging in the same behavior.  Id. ¶¶ 88–89.  Guldenzoph told her manager that she felt the write-up was due to her complaints about defendants' possibly illegal wage and hour practices.  Id. ¶¶ 92–94.  She was directed to raise her concerns with IRHG's Human Resources department.  Id. ¶¶ 55, 94.  Three days after the write-up, Guldenzoph was

---

[3] Though she was requested to do so, the parties clarified during a hearing on defendants' motion that Guldenzoph never actually worked for O-Ku Jacksonville.  ECF No. 28.

invited to discuss her concerns with various IRHG managers, and the IRHG managers terminated Guldenzoph's employment during this meeting.  Id. ¶¶ 56, 96, 99–100.

Guldenzoph filed this case on October 24, 2023.  ECF No. 1.  She then filed an amended complaint, which is now the operative complaint, on January 24, 2024.  ECF No. 15, Amend. Compl.  She asserts seven causes of action, mostly for various FLSA violations.[4]  Id.  On February 21, 2024, defendants moved for dismissal.  ECF No. 19.  Guldenzoph responded in opposition on March 23, 2024, ECF No. 23, to which defendants replied on April 5, 2024, ECF No. 27.  As such, the matter is fully briefed and is now ripe for the court's review.

## II.  DISCUSSION

Defendants' motion to dismiss is complicated.  They assert four different grounds for dismissal of different groups of defendants in various combinations.  First, they argue that all claims against O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, and O-Ku Raleigh should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because Guldenzoph does not have standing to pursue her claims against these defendants.  ECF No. 19 ¶ 1.  Second, they argue that the court should

---

[4] Specifically, she asserts causes of action for (1) unlawful retaliation in violation of 29 U.S.C. § 215(a)(3), on behalf of herself individually; (2) failure to provide proper notice of tip credit and to pay minimum wage in violation of 29 U.S.C. §§ 203(m), 216(b), on behalf of herself and group members; (3) improper inclusion of non-service/kitchen staff in the tip pool in violation of 29 U.S.C. §§ 203(m), 216(b), on behalf of herself and group members; (4) failure to pay minimum wage for non-tipped work in violation of 29 U.S.C. §§ 203(m), 216(b), on behalf of herself and group members; (5) failure to pay for work completed in violation of 29 U.S.C. §§ 203(m), 206(a)(1), 216(b), on behalf of herself and class members; (6) failure to pay overtime in violation of 29 U.S.C. § 207(a)(2), on behalf of herself and group members; and (7) quantum meruit/unjust enrichment, on behalf of herself and the class.  Amend. Compl. ¶¶ 113–170.

dismiss the claims against O-Ku Nashville, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, and O-Ku Raleigh (collectively, the "Out-Of-State Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(2) because the court does not have personal jurisdiction over these defendants. Id. ¶ 2. Third, they argue that the court should dismiss the claims against all defendants pursuant to Federal Rule of Civil Procedure 12(b)(3) because this court is not a proper venue to adjudicate this dispute. Id. ¶ 3. Fourth, they argue that the court should dismiss the claims asserted against O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, and O-Ku Raleigh pursuant to Federal Rule of Civil Procedure 12(b)(6) because Guldenzoph has failed to state a claim against these defendants. Id. ¶ 4.

In response, Guldenzoph argues that the court should deny defendants' motion to dismiss in full. See generally ECF No. 23. Alternatively, she requests leave to conduct a six-month period of jurisdictional discovery and further requests that the court reserve its ruling on defendants' motion until after the parties have conducted this discovery and re-briefed the issues. Id. at 27–28.

Ultimately, the court finds that Guldenzoph does not have standing to pursue her claims against O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, or O-Ku Raleigh. Accordingly, the court dismisses her claims against these defendants pursuant to Federal Rule of Civil Procedure 12(b)(1).[5] However, the court finds that jurisdictional discovery is warranted before the court makes a final determination on the

---

[5] Upon the dismissal of Guldenzoph's claims against O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, and O-Ku Raleigh pursuant to Rule 12(b)(1), the court need not reach the merits of those defendants' request for dismissal under Rule 12(b)(6).

personal jurisdiction and venue issues raised in defendants' motion.  The court will therefore explain its reasoning in two parts.  First, the court will explain why it does not have subject matter jurisdiction over Guldenzoph's claims against O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, or O-Ku Raleigh.  Second, the court will explain why jurisdictional discovery is warranted before the court rules on personal jurisdiction and venue.

### A.  Subject Matter Jurisdiction

#### 1.  Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) represents a challenge to the court's subject matter jurisdiction.  Arbaugh v. Y & H Corp., 546 U.S. 500, 507 (2006).  Pursuant to Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Lack of subject matter jurisdiction may be raised at any time by a party or the court.  See Arbaugh, 546 U.S. at 506-07.  "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff."  Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

In deciding such a motion, "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 333 (4th Cir. 2014) (internal quotation marks omitted).  When determining whether subject matter jurisdiction is present, the court applies the standard applicable to motions for summary judgment where the nonmoving party must set forth

specific facts beyond the pleadings to show that a genuine issue of material fact exists. <u>Richmond</u>, 945 F.2d at 768 (citing <u>Trentacosta v. Frontier Pac. Aircraft Indus.</u>, 813 F.2d 1553, 1559 (9th Cir. 1987)).  "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  <u>Id.</u>

This court does not have jurisdiction to hear a case if the plaintiff does not have standing.  <u>See</u> <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016).  The "'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  <u>Id.</u> (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).  If the plaintiff has not "'clearly . . . allege[d] facts demonstrating' each element," there is no standing, and this court is without jurisdiction to decide the case.  <u>Id.</u> (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 518 (1975)).

### 2.  Discussion on Standing

As a general rule, an FLSA collective action will survive Article III's standing requirements only when the named plaintiffs were employed by each of the named defendants.  <u>Crumbling v. Miyabi Murrells Inlet, LLC</u>, 192 F. Supp. 3d 640, 646–47 (D.S.C. 2016).  In her amended complaint, Guldenzoph does not make any specific allegations about illegal employment practices or decisions by O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, or O-Ku Raleigh.[6]  Rather, she accuses

---

[6] There are a few places in the amended complaint in which Guldenzoph invokes the name of one of these particular defendants to provide an example of a behavior she attributes to all defendants.  <u>See</u> Amend. Compl. ¶¶ 47 ("For example, IRHG's website

these defendants of FLSA violations when referring to them collectively along with the other defendants as either "Defendants" or "Restaurant Defendants." See, e.g., Amend. Compl. ¶¶ 72 ("Indeed, for years, the Restaurant Defendants maintained a policy and practice, as directed by Defendant IRHG, whereby tipped employees were required to perform non-tip-producing side work unrelated to the employees' tipped occupation while still being compensated for that work at the lesser non-minimum wage tip credit rate."), 148 ("For many years, Defendants compensated Plaintiff at the tip-credit rate for this non-tip-producing work."). Thus, defendants argue that Guldenzoph has failed to establish standing as to O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, or O-Ku Raleigh. ECF Nos. 19 ¶ 1; 19-1 at 9.

The standing issues presented in this case are daunting upon initial review.[7] To disentangle the problem, the court believes the parties' well-briefed arguments can be reduced to two key issues: the first is whether Guldenzoph can establish standing through a common law alter-ego or single business enterprise theory, and the second is whether she can establish standing through a joint employer theory under the FLSA.[8] The court

_____

proudly displays a quotation from the general manager of Defendant O-Ku Atlanta, Fatini Jiap, stating "IRHG surely has proven that we, employees, are the most important element.'"), 49 ("For example, a general manager newly hired to work at O-Ku Nashville may complete his or her training at O-Ku Charlotte's facility."), 61 ("For example, in early 2023, when O-Ku Jacksonville was opening its doors, Plaintiff was asked to work at the restaurant for a few months even though she mainly worked at the O-Ku Nashville location.").

[7] As the South Carolina Supreme Court once stated in another case involving the single business enterprise theory, these issues are "not for the weary." Stoneledge at Lake Keowee Owners' Ass'n, Inc. v. IMK Dev. Co., 866 S.E.2d 542, 545 (S.C. 2021).

[8] Defendants initially assert four arguments in support of their contention that Guldenzoph lacks standing: (1) Guldenzoph has failed to allege sufficient facts demonstrating that she was injured by O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, or O-Ku Raleigh; (2) Guldenzoph has failed to allege that she had an employer-employee relationship with O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte,

9

will take each of these issues in turn, starting with the alter-ego theory or the single business enterprise theory.

### a. Alter-Ego or Single Business Enterprise Theory of Standing

Guldenzoph argues that she has standing to assert claims against all defendants because they are alter-egos operating as a single enterprise. ECF No. 23 at 7 & n.4. Before the court can determine whether this assertion is sufficient to confer standing, the court must start with the question of whether Guldenzoph has made the requisite showing to establish the alter-ego theory or the single business enterprise theory in the first place. Guldenzoph argues that she has. The court, however, is not convinced.

The alter-ego doctrine is a theory of piercing the corporate veil under South Carolina common law.[9] Drury Dev. Corp. v. Found. Ins. Co., 668 S.E.2d 798, 800 n.1

---

O-Ku Jacksonville, or O-Ku Raleigh; (3) Guldenzoph cannot establish standing by alleging that the defendants meet the definition of a single "enterprise," as the term is defined in the FLSA; and (4) Guldenzoph cannot establish standing based on the possibility of a future collective. ECF No. 19-1 at 9–17.

    In her response, Guldenzoph clarifies that her theory of standing is not based on the FLSA definition of a single "enterprise." ECF No. 23 at 7 & n.4. She further clarifies that she is not alleging standing based on the existence of a possible future collective. Id. at 17. Rather, she is alleging that the defendants are "alter egos" operating a "single enterprise" under South Carolina common law, and she responds to defendants' first and second arguments by asserting that she need not allege either injury stemming from each defendant or an employer-employee relationship with each defendant because she is alleging that all defendants are her "joint employer" under the FLSA. Id. at 7–17. Thus, these two issues emerge.

    [9] Both parties implicitly accept that the determination of whether to apply the alter-ego or single business enterprise theories will be governed by South Carolina law rather than that of another jurisdiction. See ECF Nos. 23 at 9–12; 27 at 5–6. The court agrees with this assessment. "In a federal question case that incorporates a state law issue . . . a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise." Baker v. Antwerpen Motorcars Ltd., 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011); see also DeWitt v. Hutchins, 309 F. Supp. 2d 743, 751 (M.D.N.C. 2004). In corporate law cases, South Carolina courts typically decide choice of law issues according to the internal affairs doctrine, which means looking to the laws of the state of incorporation. Pertuis v. Front Roe Rests., Inc., 817

(S.C. 2008). As with other veil-piercing theories, it "is not to be applied without substantial reflection." Id. (quoting Sturkie v. Sifly, 313 S.E.2d 316, 318 (S.C. Ct. App. 1984)). It "requires a showing of [1] total domination and control of one entity by another and [2] inequitable consequences caused thereby." Colleton Cnty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cnty., 638 S.E.2d 685, 692 (S.C. 2006). The control element "may be shown where the subservient entity manifests no separate interest of its own and functions solely to achieve the goals of the dominant entity." Id. Notably, the inequitable consequences element requires some "fraud or misuse of control by the dominant entity which results in some injustice." Id. (emphasis added); accord Oskin v. Johnson, 735 S.E.2d 459, 465 (S.C. 2012) (explaining that the alter-ego theory does not apply "in the absence of fraud, injustice, or contravention of public policy").

Likewise, to demonstrate the related single business enterprise theory, a party "must show both (1) the intertwining of the operations of the entities and (2) evidence of 'bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions.'"[10] Stoneledge at Lake Keowee Owners' Ass'n, Inc. v. IMK

_____

S.E.2d 273, 277–78 (S.C. 2018). However, there is an exception to this general rule in cases such as this one when the court is deciding whether various corporate "entities actually operate as a single business enterprise[] and thus should be treated as a single entity." Id. at 278. In such instances, South Carolina law applies. Id.

[10] Guldenzoph describes the single business enterprise theory as an "offshoot" of the alter-ego theory under South Carolina law, and her analysis treats the two concepts as either a single theory of liability or as being largely interchangeable. ECF No. 23 at 9. These concepts are very similar, as they are both equitable theories for setting aside the corporate form. See Stoneledge, 866 S.E.2d at 548. The exact formulation of these theories varies between jurisdictions, see Pertuis, 817 S.E.2d at 278–81; Stephen B. Presser, The Bogalusa Explosion, "Single Business Enterprise," "Alter Ego," and Other Errors 100 Nw. U. L. Rev. 405, 412–15, 420–27 (2006), and the South Carolina Supreme Court, as far as this court can tell, has not provided explicit instructions on when one theory would apply and the other would not. However, the supreme court has suggested, through a parenthetical citation to authority from another jurisdiction, that the alter-ego

Dev. Co., 866 S.E.2d 542, 551 (S.C. 2021) (quoting Pertuis v. Front Roe Rests., Inc., 817

S.E.2d 273, 280–81 (S.C. 2018)).  The South Carolina Supreme Court, adopting the

reasoning of the Texas Supreme Court, has made especially clear that the injustice

requirement under the single business enterprise theory analysis necessitates something

more than "a subjective perception of unfairness."  Pertuis, 817 S.E.2d at 280 (quoting

SSP Partners v. Gladstrong Invs. (USA) Corp., 275 S.W.3d 444, 455 (Tex. 2008)).

> [R]ather, these words are used . . . as shorthand references for the kinds of
> abuse, specifically identified, that the corporate structure should not
> shield—fraud, evasion of existing obligations, circumvention of statutes,
> monopolization, criminal conduct, and the like.  Such abuse is necessary
> before disregarding the existence of a corporation as a separate entity.  Any
> other rule would seriously compromise what we have called a 'bedrock
> principle of corporate law'—that a legitimate purpose for forming a
> corporation is to limit individual liability for the corporation's obligations.

Id. (second alteration in original) (quoting SSP Partners, 275 S.W.3d at 455).

As for the first factor, which evaluates control (under an alter-ego theory analysis)

and the intertwining of operations (under a single business enterprise theory analysis),

Guldenzoph points to her allegations that the Restaurant Defendants are jointly owned

and managed by officers at IRHG, including Brienza who oversees all O-Ku operations;

that IRHG and its employees operate, oversee, and make employment decisions for each

Restaurant Defendant; that all defendants hold themselves out as a single business

enterprise under the same brand name; that IRHG has common employees with the other

defendants; that all the Restaurant Defendants offer the same products; and that all the

---

theory would be used to impose liability when there is a parent-subsidiary relationship
and the single enterprise theory is used to impose liability between sister corporations.
See Pertuis, 817 S.E.2d at 279 n.5 (citing Las Palmas Assocs. v. Las Palmas Ctr. Assocs.,
1 Cal. Rptr. 2d 301, 301 (Ct. App. 1991)).  In any event, the distinction is not important
for the purposes of this case, and the court does not wish to speak for the South Carolina
courts on this question of South Carolina law.

Restaurant Defendants utilize the same employment practices and interchange employees. ECF No. 23 at 10.

Guldenzoph also argues that she has made the second required showing under either an alter-ego or single business enterprise theory: injustice. ECF No. 23 at 11–12. She notes that the Sixth Circuit Court of Appeals, where both she and O-Ku Nashville are based, does not permit FLSA claims to be asserted as nationwide class actions. See id.; Canaday v. Anthem Cos., 9 F.4th 392 (6th Cir. 2021). She, therefore, suggests that, by arguing this court does not have jurisdiction, defendants seek to force this case into a district court in the Sixth Circuit, "where controlling precedent would deprive a federal court of personal jurisdiction over a nationwide class so that their liability would be substantially reduced." ECF No. 23 at 11. Thus, she concludes that "[a]llowing [IRHG and the Restaurant Defendants] to use a fictional corporate structure to avoid compensating employees fairly under the FLSA would 'promote injustice,' [thereby] satisfy[ying] the second prong of the alter ego test." Id. (second, third, and fourth alterations in original) (quoting Nicks v. Koch Meat Co., 260 F. Supp. 3d 942, 962 (N.D. Ill. 2017)).[11]

_____

[11] In arguing that the alter-ego theory is sufficient to confer standing, Guldenzoph relies primarily on the United States District Court for the Northern District of Illinois's decision in Nicks, 260 F. Supp. 3d at 947, 962–63. ECF No. 23 at 7. In that case, the court found that the plaintiffs established standing to pursue an FLSA claim as a collective action against multiple corporate defendants by alleging that the various defendants acted as a single corporate entity under alter-ego theory. Nicks, 260 F. Supp. 3d at 963–64. The court specifically predicated this decision on its determination that "[a]llowing the . . . Defendants to use a fictional corporate structure to avoid compensating employees fairly under the FLSA would 'promote injustice,' . . . ." Id. at 962. The court's decision in Nicks was expressly based on Illinois common law, not South Carolina common law. Id. at 959 & n.6. Yet Guldenzoph argues that "Illinois law requires the same showing as South Carolina" when applying alter-ego theory. ECF No. 23 at 9 n.6. Because the court finds that Guldenzoph has failed to make the necessary

Although Guldenzoph has alleged that IRHG exerted an extreme level of control over the Restaurant Defendants, see Amend. Compl. ¶¶ 12–19, 29–30, 35–37, 40, 44–47, 53–63, 66–78, her allegations fall short of indicating that defendants' corporate structure allowed them to perpetuate their allegedly unlawful employment practices.  At most, the only "injustice" she identifies is that defendants' liability might be reduced because of her inability to pursue her claims as a nationwide class action.  See ECF No. 23 at 11–12.  Yet the precedents cited above make clear that liability limitations are a feature, not a defect, of South Carolina corporate law.  See Pertuis, 817 S.E.2d at 280; Stoneledge, 866 S.E.2d at 551 & n.6; Colleton Cnty. Taxpayers Ass'n, 638 S.E.2d at 692.  As such, Guldenzoph has simply not identified the type of injustice that is necessary under either the alter-ego theory or the single business enterprise theory.[12]  See Pertuis, 817 S.E.2d at 280; Stoneledge, 866 S.E.2d at 551 & n.6; Colleton Cnty. Taxpayers Ass'n, 638 S.E.2d at 692.  Because the court finds that application of these theories is inappropriate in this case, the court declines to delve into the question of whether such a theory could support standing.[13]

---

showing for the alter-ego theory under South Carolina law, the court declines to make any comparison to Illinois law.

[12] Additionally, even if employees such as Guldenzoph are unable to pursue a nationwide class action in the Sixth Circuit, they may still seek compensation by bringing suit in each of the Restaurant Defendant's home district; thus, no injustice exists in this case.

[13] While Guldenzoph concedes that "no court in the Fourth Circuit has imposed alter ego liability in the FLSA context," she notes that one court in this circuit has "acknowledged the possibility[] but declined to attach liability because the plaintiffs 'alleged no facts to support the alter ego theory.'"  ECF No. 23 at 8 (citing Rettig v. All. Coal, LLC, 2023 WL 5673961, at *6 (N.D. W. Va. Sept. 1, 2023)).

14

### b.  Joint Employer Theory of Standing

The FLSA, and applicable regulations, contemplate that multiple joint employers may have simultaneously employed a plaintiff.  Crumbling, 192 F. Supp. 3d at 644–45.  "Therefore, the joint employment doctrine: (1) treats a worker's employment by joint employers as 'one employment' for purposes of determining compliance with the FLSA's wage and hour requirements and (2) holds joint employers jointly and severally liable for any violations of the FLSA."  Salinas v. Com. Interiors, Inc., 848 F.3d 125, 134 (4th Cir. 2017).  Courts in this district have previously considered whether the joint employer doctrine confers standing for plaintiffs to bring FLSA claims against various subsidiaries or restaurant locations where those plaintiffs did not work.  Crumbling, 192 F. Supp. 3d at 644–47; Wright v. Waste Pro USA Inc., 2019 WL 3344040, at *12–13 (D.S.C. July 25, 2019).  However, in both of those cases, the court found that there was no standing because the plaintiffs had not alleged facts to support application of the joint employer doctrine.  Crumbling, 192 F. Supp. 3d at 647; Waste Pro, 2019 WL 3344040, at *12–13.  Nevertheless, other courts in this circuit have found that the joint employer doctrine is sufficient to confer standing over FLSA claims.  See, e.g., Heard v. W. Va. United Health Sys., Inc., 2023 WL 11113847, at *10 (N.D.W. Va. Nov. 15, 2023) (finding that the plaintiffs' injuries were fairly traceable to the defendants because the plaintiffs "alleged that WVU Medicine together with each defendant affiliate are FLSA joint employers, not completely disassociated from each other").

Thus, Guldenzoph argues that she does not need to allege either an injury stemming from each defendant or an employee-employer relationship with each defendant because she has alleged that the defendants were collectively her joint

employer.  ECF No. 23 at 12–17.  In contrast, defendants do not challenge Guldenzoph's allegation that she was jointly employed by O-Ku Nashville and IRHG.  ECF No. 19-1 at 11.  However, they claim that she has failed to allege that she was jointly employed by any of the other defendants.  Id. at 12–13.  As such, the question for the court is whether Guldenzoph has alleged that O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, and O-Ku Raleigh were her joint employers.  The court finds that she has not.

The Fourth Circuit uses a two-step framework to assess FLSA joint employment claims.  "[C]ourts must first determine whether two entities should be treated as joint employers and then analyze whether the worker constitutes an employee or independent contractor of the combined entity, if they are joint employers, or each entity, if they are separate employers."  Salinas, 848 F.3d at 139–40.  The "fundamental question" for determining joint employment is "whether two or more persons or entities are 'not completely disassociated' with respect to a worker such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment."  Id. at 141.  In Salinas, the Fourth Circuit provided courts with six factors to guide their inquiry in this question:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;
>
> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;
>
> (3) The degree of permanency and duration of the relationship between the putative joint employers;

16

(4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

Id. at 141–42.  While these factors are meant to guide courts in answering the threshold question, "[t]he ultimate determination of joint employment must be based upon the circumstances of the whole activity."  Id. at 142 (alteration in original) (quoting Schultz v. Cap. Int'l Sec., Inc., 466 F.3d 298, 306 (4th Cir. 2006)).

Guldenzoph argues that the allegations in her amended complaint could support a finding that all defendants were collectively her joint employer.  ECF No. 23 at 15.  In particular, she contends that application of the Salinas factors indicate that defendants were her joint employer because "the Amended Complaint alleges that the Restaurant Defendants and O-Ku Nashville jointly shared power to supervise workers, like Guldenzoph, through indirect means, including through IRHG and its regular audits of each restaurant."  ECF No. 23 at 14–15.  She specifically focuses on her allegations that the Restaurant Defendants are under common management and control and are subject to IRHG's direction, including hiring and firing decisions; that they have a shared human resources department; they interchange employees; that they all share the name O-Ku and share the same senior management; that they have the same headquarters and ownership; that they pool resources; and that they share the same employment practices that are the

17

impetus of this dispute, such as their tipping policy and the fact that Guldenzoph was fired by an IRHG human resources employee.  Id. at 15–17.

The court finds Guldenzoph's arguments unpersuasive.  While Guldenzoph may have alleged that IRHG and O-Ku Nashville were her joint employers, she has failed to allege that O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, and O-Ku Raleigh were her joint employers.  See Amend. Compl. ¶ 4 (alleging that Guldenzoph "worked primarily for O-Ku Nashville, LLC and was jointly employed by Defendant IRHG").  Notably, she has not alleged that O-Ku Charleston, O-Ku Atlanta, O-Ku Charlotte, O-Ku Jacksonville, or O-Ku Raleigh "share[d], agree[d] to allocate responsibility for, or otherwise codetermine[d] . . . the essential terms and conditions of [her] employment."[14]  See Salinas, 848 F.3d at 141.  For instance, none of Guldenzoph's allegations support a finding that these five defendants shared any authority to control her, fire her, determine her wages, or any other activities that employers normally undertake.  See Crumbling, 192 F. Supp. 3d at 647; cf. Guzman v. KP Stoneymill, Inc., 2024 WL 229564, at *3–4 (D. Md. Jan. 22, 2024) (finding that two restaurants were a joint employer when both restaurants "retained the power to hire and fire [the employee], discipline him, and determine his rate and manner of pay" and when the employee worked occasionally at both locations).  Because of this lack of control, the first, second, and sixth Salinas factors weigh heavily against a finding that these defendants were her

---

[14] The closest Guldenzoph comes to making such an allegation is when she asserts that she was asked to work temporarily for O-Ku Jacksonville.  See Amend. Compl. ¶ 61. However, as the parties clarified during a hearing, Guldenzoph never actually worked for O-Ku Jacksonville, ECF No. 28; see also ECF No. 19-6 ¶ 9 (declaration in which O-Ku Jacksonville's assistant general manager testifies that Guldenzoph never worked at that location), and O-Ku Jacksonville, therefore, never shared control over Guldenzoph.

joint employer.[15]  See Salinas, 848 F.3d at 141–42; see also Rettig v. All. Coal, LLC, 2023 WL 5673961, at *4 (N.D. W. Va. Sept. 1, 2023).  As the District Court for the Northern District of West Virginia recently put it, "[u]niform policies and practices applied by the Parent Defendants to all defendants does not alone support the joint employer theory."  Rettig, 2023 WL 5673961, at *4.

Consequently, Guldenzoph has failed to allege a joint employer relationship with O-Ku Charleston, O-Ku Atlanta, O-Ku Jacksonville, O-Ku Charlotte, and O-Ku Raleigh, and the court finds that she does not have standing to pursue her claims against these defendants.  See id.; Crumbling, 192 F. Supp. 3d at 647; Waste Pro, 2019 WL 3344040, at *13; Salinas, 848 F.3d at 141–42.  Upon the dismissal of those defendants for lack of standing, the court need not reach the defendants' motion to dismiss for failure to state a claim as to those defendants.  See Rashad v. Jenkins, 2016 WL 901279, at *7 n.6 (E.D. Va. Mar. 3, 2016) (declining to rule on issues raised in a Rule 12(b)(6) motion after dismissing the claims on subject matter jurisdictional grounds).

---

[15] To the extent, if any, the other factors weigh in favor of finding a joint employment relationship, those factors do not overcome the fact that there are no allegations that the Restaurant Defendants, aside from O-Ku Nashville, shared in controlling the various aspects of Guldenzoph's employment.  As stated above, the Fourth Circuit emphasized in Salinas that "[t]he ultimate determination of joint employment must be based upon the circumstances of the whole activity."  848 F.3d at 142 (quoting Schultz, 466 F.3d at 306).  When assessing the factors, courts should not simply count how many factors weigh one way compared to the number of those mitigating in a different direction.  See id. ("'A score of 5 to 3 decides a baseball game,' not whether two entities constitute joint employers under the relevant totality-of-the-circumstances-test." (citation and alteration omitted) (quoting Reyes v. Remington Hybrid Seed Co., 495 F.3d 403 (7th Cir. 2007)).  Indeed, one factor could be determinative of the inquiry if that factor is significantly important to the facts of a particular case.  Id. at 142 n.10.

### B. Personal Jurisdiction, Venue, and Jurisdictional Discovery

To begin its discussion of personal jurisdiction, venue, and jurisdictional discovery, the court reiterates that it dismisses O-Ku Charleston, O-Ku Atlanta, O-Ku Jacksonville, O-Ku Raleigh, and O-Ku Charleston for lack of subject matter jurisdiction. The court will therefore analyze the parties' remaining arguments only to the extent they relate to O-Ku Nashville, the only remaining out-of-state defendant, and IRHG, the only remaining in-state defendant.

Defendants argue that Guldenzoph's claims against O-Ku Nashville should be dismissed because the court lacks personal jurisdiction, and they argue that her claims against both O-Ku Nashville and IRHG should be dismissed because this court is not a proper venue for adjudication of this dispute. ECF No. 19-1 at 17–31. Alternatively, defendants request that the case be transferred to the United States District Court for the Middle District of Tennessee. Id. at 31. In response, Guldenzoph argues that defendants' motion should be denied in its entirety because this court has personal jurisdiction over all defendants and is a proper venue. ECF No. 23 at 17–30. Yet she alternatively requests that the court grant leave for jurisdictional discovery to help resolve the issues presented in defendants' motion. Id. at 27–28. Ultimately, the court agrees with Guldenzoph that jurisdictional discovery is warranted as to O-Ku Nashville and IRHG only.

To explain its reasoning, the court will briefly outline the personal jurisdiction considerations at play and the parties' respective arguments pertaining to those issues. After that, the court will conclude by explaining why jurisdictional discovery is warranted to help with determining both the personal jurisdiction and venue questions.

### 1. Personal Jurisdiction

A party may challenge the court's power to exercise personal jurisdiction over it through a motion under Federal Rule of Civil Procedure 12(b)(2). "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). However, the plaintiff's burden when confronted with a particular jurisdictional challenge varies depending on the stage of the litigation, the posture of the case, and the evidence before the court. Id.; Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016); Sec. & Exch. Comm'n v. Receiver for Rex Ventures Grp., LLC, 730 F. App'x 133, 136 (4th Cir. 2018).

When a court rules on a personal jurisdiction issue presented in a pretrial motion prior to holding an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Combs, 886 F.2d at 676. In such circumstances, much like when reviewing motions made pursuant to Rule 12(b)(6), "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. "In doing so, however, the court need not 'credit conclusory allegations or draw farfetched inferences.'" Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320 (4th Cir. 2000) (unpublished table decision) (quoting Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)). "Unlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw

21

all reasonable inferences in favor of the party asserting jurisdiction." Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019).

If the plaintiff's allegations are sufficient to make a prima facie case for personal jurisdiction, the court may deny the Rule 12(b)(2) motion and later revisit the question or defer ruling on the motion until the parties have had the opportunity to develop the factual record. Combs, 886 F.2d at 676; Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018). District courts have broad discretion to allow discovery to help resolve personal jurisdiction issues, Mylan Lab'ys, Inc. v. Akzo, N.V., 2 F.3d 56, 64 (4th Cir. 1993), and jurisdictional discovery should normally be permitted "[w]hen the Plaintiff's claim does not appear to be frivolous," Cent. Wesleyan Coll. v. W.R. Grace & Co., 143 F.R.D. 628, 644 (D.S.C. 1992), aff'd 6 F.3d 177 (4th Cir. 1993). Yet, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003); see also Pandit v. Pandit, 808 F. App'x 179, 183 (4th Cir. 2020) ("Jurisdictional discovery is proper when the plaintiff has alleged sufficient facts to suggest the possible existence of personal jurisdiction."). Once the factual record is developed and presented to the court, either at an evidentiary hearing or at trial, the plaintiff has the burden of proving facts supporting jurisdiction by a preponderance of the evidence. Grayson, 816 F.3d at 268.

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. See ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997). Thus, in evaluating a

challenge to personal jurisdiction, the court engages in a two-step analysis. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). First, it must find that the forum state's long-arm statute authorizes the exercise of jurisdiction under the facts presented. Id. Second, if the statute does authorize jurisdiction, then the court must determine if its exercise of personal jurisdiction is consistent with due process. Id. South Carolina's long-arm statute extends its reach to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002); Cockrell v. Hillerich & Bradsby Co., 611 S.E.2d 505, 508 (S.C. 2005); see S.C. Code Ann. § 36-2-801, et seq. Consequently, the two-step inquiry compresses into a single question: whether the court's exercise of personal jurisdiction comports with due process. Maseng v. Lenox Corp., 483 F. Supp. 3d 360, 364–65 (D.S.C. 2020).

Personal jurisdiction over a nonresident defendant can be either specific or general. Centricut, 126 F.3d at 623–24. General jurisdiction arises when the nonresident defendant's contacts with the forum state "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). Usually, individuals are considered "at home" in the jurisdiction where the individual is domiciled, and corporations are considered "at home" in jurisdictions where they are incorporated or where they have their principal place of business." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014); Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 132 (4th Cir. 2020). A business entity's principal place of business is where the business has its "nerve center"—it is where the business's officers "direct, control and coordinate [the business's] activities." Hertz Corp. v. Friend,

23

559 U.S. 77, 92–93 (2010); see also Ferrell v. Express Check Advance of SC LLC, 591 F.3d 698, 705–06 (4th Cir. 2010) (applying the "nerve center" test to unincorporated entities, such as LLCs). General jurisdiction may be exercised even when the suit is unrelated to the defendant's contacts within the forum state. See S.C. Code Ann. § 36-2-802; Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 416 (1984).

In contrast to general jurisdiction, specific jurisdiction may only be exercised when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales, 466 U.S. at 416. Exercising specific jurisdiction does not comport with due process unless the defendant has purposefully established sufficient "minimum contacts" with the forum state and the exercise of jurisdiction comports with notions of "fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985). A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475. Upon a showing of the defendant's purposeful availment, the fairness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy. World-Wide Volkswagen, 444 U.S. at 292.

Guldenzoph argues that the court may exercise general jurisdiction over the O-Ku Nashville because it was "at home" in South Carolina and that that O-Ku Nashville's "sustained interaction with South Carolina through IRHG and its members over the wage and hour policies here also suffices to establish specific jurisdiction." ECF No. 23 at 19–20, 30. She avers that, in its Tennessee business registration filings, O-Ku Nashville lists its address as 1426 Meeting Street, Charleston, South Carolina—IRHG's headquarters—and she points to her allegations that IRHG ran each restaurant's operations from this address. ECF No. 23 at 19–20 (citing ECF No. 23-1; Amend. Compl. ¶¶ 35–36, 44–78). She contends that this is enough for the court to find that she has made a <u>prima facie</u> case for personal jurisdiction. <u>Id.</u> at 20, 27–28. If the court is unwilling to deny defendants' motion, Guldenzoph argues that her showing is sufficient for the court to grant her request for leave to conduct jurisdictional discovery as an alternative to dismissal. <u>Id.</u> at 27–28.

In contrast, defendants argue that O-Ku Nashville's contacts in South Carolina are not sufficiently systematic and continuous for it to be considered at home in this state.[16] ECF No. 19-1 at 18–19. They also argue that there is no specific jurisdiction over O-Ku Nashville because (1) O-Ku Nashville has not purposefully availed itself of the privilege of doing business in South Carolina, (2) Guldenzoph's claims do not arise from any alleged activities directed at South Carolina, and (3) that it would not be constitutionally reasonable to assert personal jurisdiction over O-Ku Nashville. <u>Id.</u> at 22–29. Defendants

---

[16] Defendants specifically point to the declaration filed by Ashley Johnson, the general managers of O-Ku Nashville, who testifies O-Ku Nashville is registered to do business, and solely does business, in Tennessee. <u>See</u> ECF No. 19-1 at 19 (citing ECF Nos. 19-2, Johnson Decl. ¶¶ 3–7).

further contend that jurisdictional discovery would be nothing more than a fishing expedition and should not be permitted.  ECF No. 27 at 13–15.

It would be unusual for a court to exercise personal jurisdiction over a domestic corporation's foreign subsidiary, and courts generally may not do so when the only basis for jurisdiction over the subsidiary is the parent's contacts with the forum.  See Goodyear, 564 U.S. at 930; William v. AES Corp., 28 F. Supp. 3d 553, 565 (E.D. Va. 2014); Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d 1012, 1021 (10th Cir. 1990); RMS Titanic, Inc. v. Zaller, 978 F. Supp. 2d 1275, 1302–03 (N.D. Ga. 2013).  For similar reasons, the court is skeptical of its ability to assert personal jurisdiction over O-Ku Nashville based simply on IRHG's presence in South Carolina.  Even so, the court's analysis should not end immediately upon finding that a plaintiff wishes to assert personal jurisdiction over a foreign subsidiary; there may be cases in which a subsidiary's own contacts with a state are such that the subsidiary could be subjected to personal jurisdiction in that state.

In this case, Guldenzoph has alleged that O-Ku Nashville's office and principal place of business are in South Carolina, that its executive management is located in South Carolina, that the employees responsible for the alleged unlawful employment policies were located in South Carolina, that she was directed to speak with South Carolina based employees about the employment practices, and that her employment was ultimately terminated by South Carolina based employees.  Amend. Compl. ¶ 14, 35–36, 40–44, 52–66, 72, 74, 75, 77, 89, 94–99; see also ECF No. 23-1 at 5 (O-Ku Nashville's filings with the Tennessee Secretary of State indicating that its "Principal Office" is in South

26

Carolina).[17]  Reading Guldenzoph's allegations in the light most favorable to her, she

plausibly alleges that O-Ku Nashville's principal place of business—the place where its

officers "direct, control and coordinate [its] activities"—is in South Carolina.[18]  See

Hertz, 559 U.S. at 92–93; accord Daimler, 571 U.S. at 137; Fidrych, 952 F.3d at 132.

---

[17] Defendants correctly point out that, without more, merely listing a principal
office in South Carolina on a business filing would not be sufficient to establish O-Ku
Nashville's principal place of business in South Carolina.  See Hertz, 559 U.S. at 97.  In
Hertz, the Supreme Court specifically rejected a hypothetical suggestion that "the mere
filing of a form like the Securities and Exchange Commission's Form 10-K listing a
corporation's 'principal executive offices' would, without more, be sufficient proof to
establish a corporation's 'nerve center.'"  Id. at 97.  The court's reasoning was based on
the need to avoid jurisdictional manipulation.  Id.  However, the court went on to explain
that "if the record reveals attempts at manipulation—for example, that the alleged 'nerve
center' is nothing more than a mail drop box, a bare office with a computer, or the
location of an annual executive retreat—the courts should instead take as the 'nerve
center' the place of actual direction, control, and coordination, in the absence of such
manipulation."  Id. (emphasis added).  Thus, while not dispositive, courts should not
wholly disregard where businesses list their principal offices on their filings, and
development of the record is often helpful in making this determination.  See id.

[18] Defendants argue that the nerve center test is used when assessing a
corporation's domicile for the purposes of the court's diversity jurisdiction and that the
proper test for assessing general jurisdiction is whether the corporation could be
considered "at home" in the forum.  ECF No. 27 at 11 (citing Daimler, 571 U.S. at 122).
It is true that general jurisdiction may only be assessed over a corporation that could be
considered "at home" in the forum.  See Daimler, 571 U.S. at 127.  However, as the
Supreme Court explained in Daimler, "[w]ith respect to a corporation, the place of
incorporation and principal place of business are 'paradig[m] . . . bases for general
jurisdiction."  Id. at 137 (quoting Goodyear, 571 U.S. at 137).  Thus, while the nerve
center test may have been born out of the diversity jurisdiction analysis, it remains
relevant for assessing a business's principal place of business in the general jurisdiction
context.  See id. (citing Hertz Corp., 559 U.S. at 94, in referencing a corporation's
principal place of business); Toombs v. Lowe's Home Ctrs., LLC, 2023 WL 4593372, at
*4 (D. Md. July 18, 2023) (citing Hertz Corp., 559 U.S. at 78, and explaining that courts
may use the "nerve center" test to assess whether courts have general jurisdiction over
both corporations and LLCs).  Indeed, despite arguing that the "nerve center" test is
irrelevant to the court's general jurisdiction analysis in their reply brief, ECF No. 27 at
11, defendants cite Hertz Corp., 559 U.S. at 97, in a footnote arguing against general
jurisdiction in its first memo in support of its motion, ECF No. 19-1 at 19 n.4.

### 2.  Jurisdictional Discovery

Because Guldenzoph has "alleged sufficient facts to suggest the possible existence of personal jurisdiction," the court finds that jurisdictional discovery is warranted to aid in determining whether the court has personal jurisdiction over O-Ku Nashville.  See Pandit, 808 F. App'x at 183; accord Mylan Lab'ys, 2 F.3d at 64; Cent, Wesleyan Coll., 143 F.R.D. at 644.  Moreover, because many of the arguments over whether this is a proper venue substantially overlap with the issues surrounding personal jurisdiction, the court similarly defers ruling on that portion of defendants' motion until after the jurisdictional discovery is completed.  See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13 (1978) (noting that courts have the option of permitting discovery to ascertain facts bearing on questions of both jurisdiction and venue); e.g., Clayton v. Bear Mountain Lodge, LLC, 2015 WL 12806589, at *1–2 (D.S.C. Oct. 13, 2015) (deferring ruling on both venue and personal jurisdiction challenges until after jurisdictional discovery period).

### III.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss be **GRANTED IN PART AND DENIED IN PART**.  Specifically, the portion of defendants' motion seeking dismissal of the claims against O-Ku Charleston, O-Ku Atlanta, O-Ku Jacksonville, O-Ku Charlotte, and O-Ku Raleigh is **GRANTED** and the claims against these defendants are dismissed.  The portion of the motion seeking dismissal of these same defendants pursuant to Rule 12(b)(6) is **DENIED** as moot.  Finally, the court **GRANTS** leave to conduct six-months of limited discovery over whether the court has personal jurisdiction over O-Ku Nashville and whether this court is a proper venue for

adjudication of this dispute.  After the expiration of this period, the parties shall re-brief their arguments regarding personal jurisdiction and venue.  The parties are further directed to propose a scheduling order governing this discovery period within seven (7) days of the filing of this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 4, 2024**
**Charleston, South Carolina**

29